## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

JACOB LEHMKUHL,

      **Plaintiff,**

      v.                          **CASE NO.  23-3107-JWL**

JEFF EASTER, Sedgwick County
Sheriff,

      **Defendant.**

### MEMORANDUM AND ORDER

Plaintiff brings this pro se civil rights action under 42 U.S.C. § 1983.  Plaintiff is in custody at the Sedgwick County Jail in Wichita, Kansas ("SCJ" or "SCADF").  The Court granted Plaintiff leave to proceed in forma pauperis.  On May 23, 2023, the Court entered a Memorandum and Order to Show Cause (Doc. 8) ("MOSC") finding that the proper processing of Plaintiff's Eighth Amendment claims cannot be achieved without additional information from appropriate officials of the SCJ.  *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991).  Accordingly, the Court ordered the appropriate officials of the SCJ to prepare and file a *Martinez* Report regarding Plaintiff's Eighth Amendment claims.[1]

After the *Martinez* Report (Doc. 14) (the "Report") was filed, the Court screened Plaintiff's remaining claims and entered a Memorandum and Order (Doc. 21) ("M&O") directing Plaintiff to respond to the Report and to show good cause why his remaining Eighth Amendment claims should not be dismissed for failure to state a claim.  This matter is before the Court on Plaintiff's response (Doc. 22).

---

[1]  Plaintiff's other claims have been dismissed.  *See* Doc. 20 (Memorandum and Order dismissing Plaintiff's claims under K.S.A. 21-5416 and K.S.A. 21-5505).

Plaintiff alleges that Sheriff Easter sexually assaulted Plaintiff at the SCJ, by groping Plaintiff while he was in restraints, spreading Plaintiff's "butt cheeks," and then pinning Plaintiff against the desk. (Doc. 7, at 3; Doc. 7–1, at 1.)  The Court found in the M&O that the video of the incident shows the Sheriff arriving at the door to meet Plaintiff.  (Doc. 16, video filed conventionally.)  The Sheriff then places handcuffs on Plaintiff and when Plaintiff starts walking away from the Sheriff a struggle ensues.  *Id*.  The Sheriff then grabs Plaintiff and pushes him to the wall, struggling to gain control.  *Id*.  Although part of the struggle is obscured from view, nothing in the video suggests Plaintiff was sexually assaulted.  *Id*.  Plaintiff was not pinned to the desk as alleged in his Complaint, and backup officers arrived on the scene within approximately 48 seconds.  *Id*.

The PREA investigation of the incident states that Plaintiff claimed that the assault occurred during a search, and Plaintiff refused two separate times to speak with the investigator. (Doc. 14–1, at 2.)  The investigator determined that Plaintiff's complaints were unfounded.  *Id*. at 1.  The Report states that an examination of Plaintiff's history during his tenure in the SCADF indicates his belief that the RFID chip allegedly implanted in his head provides the means and method by which others purportedly sexually assaulted him.  (Doc. 14, at 5; *see also* Doc. 14–4.)

In one instance, Plaintiff claimed that staff were using "voice recognition synthesizer systems" and "nano technology" to sexually assault him and to place images over his eyes to keep him awake.  (Doc. 14–4, at 6.)  Plaintiff alleges that this was happening through the vent in his cell.  *Id*. at 7.  In another grievance, Plaintiff claims staff used nano technology, radio frequencies, and speakers in the vents of his cell to wake him up every morning at 3 a.m. to sexually assault him.  *Id*. at 8.  Plaintiff claims that about 35 deputies are involved in torturing and sexually assaulting him, and other inmates are being paid in "bit coin etc" to keep the secret.

*Id.* at 10.   In another grievance, Plaintiff claims that people are harassing him "through the tv

case display p2p system audio" and that they are "playing audios through the TV" to harass him.

*Id.* at 12, *see also id.* at 13–17, 33 (similar claims).   A response to one of his grievances states

that:

> Spoke with mental health staff and Detective Maness.   Inmate has
> made these claims since arriving at the facility.   Mental health staff
> has stated these are delusional claims.   Camera footage was
> checked and nothing could ever be found with his claims.   He
> insists "nano-technology" is being used to rape him and not any
> person specifically touching him.

*Id.* at 15.   Plaintiff also claims that they are putting nano technology in his food and pills to "later

cause different stimulation to different parts of my body as a way to torture me and rape me." *Id.*

at 25.

Plaintiff also alleges that he was forced to stay in unhealthy living conditions, claiming

his cell was covered in feces and his requests to move or to have his cell cleaned were refused.

(Doc. 7, at 3–4; Doc. 7–1, at 1–3.)   The Report states that Plaintiff's complaints regarding his

living conditions were investigated, found to be unsubstantiated, and were not supported by any

similar claims by other inmates.   (Doc. 14, at 6.)   Regardless, Plaintiff's was moved to a different

cell multiple times.   He also received an Incident Report for placing fecal matter on the video

visitation machines on January 7, 2023.   (Doc. 14–3.)   Although he claims he was never moved

to a different cell, his grievance states that he was moved to a cell with feces "all over the place"

at 5:22 p.m. on January 7, 2023, and was moved on January 8, 2023, at around 10:31 p.m.

(Doc. 14–4, at 22.)   The response to this grievance states that "[t]here is a record of the cell being

checked before you were moved into it." *Id.*   In other grievances regarding his living conditions,

he states that "they foam sprayed the cell but not thoroughly enough to maintain a healthy

sanitary living condition/environment." *Id.* at 35.   In his attachment to his Complaint, Plaintiff

also states regarding one of his cells that "staff soaped the cell but only to a certain standard." (Doc. 7–1, at 5.)

The Court found in the M&O that Plaintiff has not shown that he is incarcerated under conditions posing a substantial risk of serious harm, and he has not shown that defendant was deliberately indifferent to his health or safety.

In his response, Plaintiff states that he will need a two-week extension of time to provide the response in pen, but he will "proceed with pencil." (Doc. 22, at 1.) Because the Court is able to read his response submitted in pencil, an extension of time is unnecessary.

Plaintiff alleges in his response that he was never asked to be interviewed regarding the video of the alleged sexual assault incident. *Id.* Plaintiff does not otherwise address the video or the Court's finding that it does not support his claims. The Sheriff, as Interested Party, was authorized to interview Plaintiff as part of the Report, but was not required to do so. The Tenth Circuit has characterized the authority to interview witnesses as a permissive grant, and not a mandatory requirement. *See Nickelberry v. Pharaoh*, 221 F.3d 1352 (Table), 2000 WL 985665, at *2 (10th Cir. 2000) (unpublished). The Tenth Circuit has previously noted that "there is no required procedure for reports ordered under Martinez." *Id.* (citation omitted); *see also Hunter v. Young*, 2006 WL 2850278, at *1 (D. Kan. 2006) ("There is no required procedure for reports ordered under *Martinez* and a court is not required to mandate interrogation of specific people pursuant to plaintiff's desires.").

Plaintiff also stresses that a deputy admitted that she saw feces in Plaintiff's cell and she wrote a statement that said Plaintiff had evidence that when he blew his nose on toilet paper feces came out of his nostrils. *Id.* at 2. Plaintiff alleges that the evidence was removed from his property. *Id.* Plaintiff also alleges that he went to the clinic shortly after the feces came out of

his nostrils. *Id.* at 3. He claims he went to the clinic for an infection in his throat and was given medication. *Id.* He also claims he was tested for Hep A, Hep B, Hep C, and HIV. *Id.*

Plaintiff's response does not show good cause why his Eighth Amendment claims should not be dismissed for the reasons set forth in the Court's M&O. Plaintiff does not address the video or the Court's finding that his sexual assault claim is unuppoprted. Plaintiff does not address the allegation that he was disciplined for spreading feces, he was moved after complaining about feces in his cell, and that staff "spray foamed" and "soaped" his cell. Plaintiff also acknowledges that medical staff provided him with the medical care and testing he requested.

Plaintiff has not presented conflicting evidence, nor has he shown good cause why his remaining claims should not be dismissed for the reasons set forth in the Court's M&O.

**IT IS THEREFORE ORDERED BY THE COURT** that this matter is **dismissed** for failure to state a claim.

**IT IS SO ORDERED.**

**Dated September 15, 2023, in Kansas City, Kansas.**

**S/ John W. Lungstrum**
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**